UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAMES WILLIAMS,

               Plaintiff

-against-

NOR METALS CORP., RUBEN TUIL,
*individually,* RADCLIFFE RICHARDSON,
*individually,* and RICHARD MASON (a/k/a RICO),
*individually,*

               Defendants.
------------------------------------------------------------X

Case No.

COMPLAINT

PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff, by and through his attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

**Nature of the Case**

1. Plaintiff brings this action charging that Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, *et seq.* ("1981"), the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et. seq.* ("NYCHRL").  Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of suffering a hostile work environment on the basis of his race (Black) and being retaliated against for complaining of race-based discrimination, resulting in his termination.

**Jurisdiction and Venue**

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3) and 1981, as well as 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state and municipal law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and/or omissions giving rise to the claims occurred within the Southern District of New York.

## Procedural Prerequisites

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated June 16, 2021 with respect to the herein charges of discrimination (the "Notice"). A copy of the Notice is annexed hereto.

7. This action is being filed within 90 days of receipt of the Notice.

## Parties

8. Plaintiff is a resident of the State of New York, County of Kings.

9. Defendant NOR METALS CORP. ("NOR") is a foreign business corporation operating in, existing under, and by virtue of, the laws of the State of New York.

10. At all times material, Defendant NOR is a metal scrap business located at 111 John Street, New York, New York 10038 (the "Location") where the discriminatory conduct alleged herein took place.

11. At all times material, Defendant NOR had 15 or more employees.

12. At all times material, Defendant NOR was Plaintiff's employer under Title VII.

13. At all times material, Defendant NOR was Plaintiff's employer under the NYSHRL.

14. At all times material, Defendant NOR was Plaintiff's employer under the NYCHRL.

15. At all times material, Defendant RUBEN TUIL ("TUIL") is and was the Chief Executive Officer ("CEO") of Defendant NOR.

16. At all times material, Defendant TUIL was Plaintiff's supervisor and had managerial and supervisory authority over Plaintiff.

17. At all times material, Defendant TUIL had the power to hire, fire, and/or directly affect the terms and conditions of Plaintiff's employment, as well as Plaintiff's daily work activities.

18. At all times material, Defendant RADCLIFFE RICHARDSON ("RICHARDSON") is and was employed by Defendant NOR.

19. At all times material, Defendant RICHARDSON was Plaintiff's supervisor and had managerial and supervisory authority over Plaintiff.

20. At all times material, Defendant RICHARDSON had the power to hire, fire and/or directly affect the terms and conditions of Plaintiff's employment, as well as Plaintiff's daily work activities.

21. At all times material, Defendant RICHARD "RICO" MASON ("MASON") is and was employed by Defendant NOR.

22. At all times material, Defendant MASON was Plaintiff's supervisor and had managerial and supervisory authority over Plaintiff.

23. At all times material, Defendant MASON had the power to hire, fire and/or directly affect the terms and conditions of Plaintiff's employment, as well as Plaintiff's daily work activities.

24. At all times material, Plaintiff was an employee of Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON.

25. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON are collectively referred to as "Defendants."

26. At all times material, all parties mentioned herein worked and/or continue to be employed at the Location.

## Material Facts

27. On or about August 17, 2019, Plaintiff began working full time for Defendant NOR at the Location as an Account Manager.

28. Plaintiff's duties while working for the Defendants included making telephone calls to various business to obtain any scrap metals and exchange them for cash.

29. Plaintiff was interviewed and hired by Defendant RICHARDSON, although most prospective employees are not hired until they meet Defendant TUIL.

30. Plaintiff earned approximately $15.00 per hour and received $125.00 for every kilogram of scrap metal obtained from various businesses.

31. In Plaintiff's position working for the Defendants, Plaintiff had an approximate annual income of $32,000 without commission.

32. Plaintiff was qualified for his position and always performed his duties well.

33. In or around September 2019, only approximately one (1) month after his employment began, Defendants began discriminating against Plaintiff.

34. In or around September 2019, Defendant RICHARDSON approached Plaintiff multiple times and told Plaintiff to "smile more" and "be more bubbly." Plaintiff was offended by Defendant RICHARDSON's comments as he did not make those comments to non-Black employees.

35. In or around September 2019, Defendant RICHARDSON again approached Plaintiff and told him, in sum and substance, "to be more friendly, not to post sticky notes, not to write on pieces of paper." Plaintiff was frustrated as Defendant RICHARDSON did not make these comments to non-Black employees.

36. Defendant RICHARDSON explained that the reason why he made those comments to Plaintiff is because Defendant TUIL was skeptical of Plaintiff and Defendant TUIL "didn't know how to be around [Plaintiff]. You know how people are, you just have to show him."

37. Up and until late September 2019, Plaintiff wore a suit while working for Defendants.

38. Plaintiff began to dress more casually as his non-Black co-workers were typically dressed in casual clothes, including jeans and sweatpants.

39. In or around late September to early October 2019, Plaintiff began arriving at work in a dress shirt and jeans.

40. Shortly after Plaintiff began dressing casually, Defendant RICHARDSON approached Plaintiff and stated "you should go back to a suit. It reflects on your work." Plaintiff was offended by Defendant RICHARDSON's comments and felt singled out among non-Black co-workers.

41. Defendant TUIL also approached Plaintiff and told Plaintiff he should go back to working in a suit and tie. Defendant TUIL explained, in sum and substance, "you work better when you're in a suit and tie. We hold you to a higher standard." Quickly after, Defendant TUIL corrected himself and stated, in sum and substance, "we don't hold you to a higher standard, but we think you work better in a suit and tie." Plaintiff was shocked and confused at Defendant TUIL's comments.

42. As a result, Plaintiff began wearing a suit again. Plaintiff felt frustrated and believed that he was being singled out and had to wear a suit and tie due to his race.

43. In or around late October 2019, Defendant TUIL offered Plaintiff a raise to $17.00/hour.

44. Throughout his employment with Defendants, Plaintiff observed the constant discriminatory and harassing culture and environment in the workplace.

45. For example, Defendant MASON would state, in sum and substance, that "Black women wear weaves because they are ashamed to love themselves and aren't real women." Defendant MASON would also state, in sum and substance, that "Black people should continue to be segregated from White people." Plaintiff felt shocked and offended at this blatantly discriminatory conduct.

46. At other times, Defendant MASON would state, in sum and substance, that "Jewish people are disgusting, and that gay people are an abomination."

47. At times while working for Defendants, Plaintiff was a few minutes late. Defendant RICHARDSON constantly threatened Plaintiff that if he was late again, he would be fired. Plaintiff was frustrated by Defendant RICHARDSON's comments as his non-Black co-workers, including Defendant RICHARDSON and Defendant TUIL were constantly late.

48. Upon information and belief, Defendants did not approach Plaintiff's non-Black employees regarding their lateness, or threaten their employment with Defendants.

49. As a result of Plaintiff arriving to work a few minutes late, Defendant RICHARDSON would take four (4) hours pay from Plaintiff's paycheck.

50. In or around November 2019, Plaintiff approached Defendant RICHARDSON about his low paychecks. In response, Defendant RICHARDSON stated in sum and substance, "get here at 6:00 A.M. then. Get here at 8:00 A.M. You need to be dedicated to your job!"

51. Nervous about losing his job, Plaintiff began arriving at the Location between 6:00 A.M. and 8:15 A.M., even though his work hours started at 8:00 A.M. However, Plaintiff was unable to get into the Location until a supervisor arrived around 8:15 A.M.  As a result, Plaintiff would be waiting at the Location for hours until a supervisor arrived to unlock the doors.

52. In or around December 2019, Plaintiff once again complained to Defendant RICHARDSON about his docked pay and how he believes that this is illegal.  Defendant RICHARDSON told Plaintiff, in sum and substance, that "he went to school, has knowledge on how this works and Plaintiff didn't know what he was talking about."

53. In or around December 2019, Plaintiff approached Defendant TUIL and complained about his docked pay.  In response, Defendant TUIL stated that it was Defendant RICHARDSON's idea to dock pay.  Plaintiff felt frustrated, defeated and felt that he had no recourse to resolve his issues.

54. In or around January 2020, Plaintiff complained to Defendants about the discrimination that he was facing.  In response, Defendant MASON told Plaintiff "you are a dumb black nigger. Don't be mad at me because you have baby mama issues." Plaintiff was shocked and disgusted by Defendant MASON's comments.

55. In or around February 2020, Defendant MASON continued his discriminatory beratement of Plaintiff.  Defendant MASON would tell Plaintiff that he was, in sum and substance, "ignorant and uneducated as a Black American."

56. On one occasion, Defendant MASON called Plaintiff a "dumb American nigger" from across the room. Plaintiff asked Defendant MASON what he said, whereafter Defendant MASON came up to Plaintiff and once again called him a "dumb American nigger" in

front of his co-workers. Plaintiff was offended and humiliated by Defendant MASON's conduct and discriminatory comments.

57. Shortly after the incident, Plaintiff approached Defendant RICHARDSON and informed Defendant RICHARDSON that he is uncomfortable in the environment that he is working in and he does not do anything to stop the harassment. In response, Defendant RICHARDSON stated, in sum and substance, that "Plaintiff had a son and he should not think about anything else but work." Plaintiff felt frustrated and ignored.

58. Throughout his employment with Defendants, whenever a new employee was hired, Defendant MASON would frequently tell them to "stay away" from Plaintiff and that Plaintiff "wasn't one of them." As a result, Plaintiff felt offended and isolated.

59. In or around March 2020, Defendant NOR shut down operations due to the COVID-19 pandemic.

60. On or about August 17, 2020, Defendant NOR resumed operations and Plaintiff went back to work.

61. In or around August 2020, Plaintiff was excelling at his job and was leading the office in sales. Plaintiff took on the extra role and was training newer employees how to better perform at their job.

62. In or around early September 2020, Plaintiff noticed that his appointments to collect scrap metals from various businesses began disappearing from the system. Plaintiff went to Defendant RICHARDSON and Defendant MASON about his concerns, but Plaintiff's complaints were, once again, ignored.

63. As a result of not obtaining appointments, Plaintiff would lose commission.

64. In or around September 2020, Plaintiff complained to Defendant TUIL about his appointments disappearing from the system. In response, Defendant TUIL directed Plaintiff to make appointments on his own and not through the system.

65. In or around October 2020, Plaintiff had an appointment with a client to pick up approximately $2,000 worth of scrap metal silver. Defendant RICHARDSON called the client, cancelled Plaintiff's appointment, and threatened to fire Plaintiff and placed him on probation.

66. Shortly thereafter, Defendant RICHARDSON informed Plaintiff that Defendant TUIL instructed him to put Plaintiff on probation. Plaintiff contacted Defendant TUIL to question these actions, to which Defendant TUIL said that Plaintiff was not "officially on probation." Plaintiff was placed on probation anyway.

67. Upon information and belief, Plaintiff was performing his job better than his fellow employees.

68. On or about November 25, 2020, Defendants terminated Plaintiff.

69. Upon information and belief, Defendants terminated Plaintiff because he complained about discriminatory conduct that he was facing in the hands of Defendants.

70. The above are just some of the comments and conduct which contributed to the race-based hostile work environment that Plaintiff experienced on a regular basis while employed by Defendants.

71. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

72. Defendants discriminated against Plaintiff solely due to Plaintiff's race (Black).

73. Defendants unlawfully discriminated against, retaliated against, humiliated, degraded and belittled Plaintiff.

74. Plaintiff was subjected to such a discriminatory, retaliatory, hostile and abusive work environment that no reasonable person in Plaintiff's shoes could or should be expected to endure.

75. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

76. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

77. Defendants acted maliciously, willfully, outrageously and with full knowledge of the law.

78. As such, Plaintiff demands punitive damages against all Defendants, jointly and severally.

**First Cause of Action for Discrimination
Under Title VII
(Not Against Individual Defendant)**

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

80. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status an employment, because of such individual's race, color, religion, sex, or national origin.

81. Defendant NOR violated the sections cited herein as set forth.

82. Plaintiff is entitled to the maximum amount allowed under this statute.

## Second Cause of Action for Retaliation
## Under Title VII
## (Not Against Individual Defendant)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees… to discriminate against any individual… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

85. Defendant NOR engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

86. Defendant NOR violated the sections cited herein as set forth.

87. Plaintiff is entitled to the maximum amount allowed under this statute.

## Third Cause of Action for Discrimination
## Under 42 U.S.C. § 1981 (As Amended)
## (Against All Defendants)

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. 42 U.S.C. § 1981 provides, in pertinent part:

> (a) Statement of Equal Rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is

> enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

90. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (Black).

91. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the sections cited herein as set forth.

92. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fourth Cause of Action for Retaliation
### Under 42 U.S.C. § 1981 (As Amended)
### (Against All Defendants)

93. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

94. By the acts and practices described above, Defendant retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. § 1981.

95. Defendants acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

96. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the sections cited herein as set forth.

97. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fifth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Against All Defendants)

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice:
>
> (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

100. Defendants engaged in an unlawful discriminatory practice by creating and maintaining a hostile work environment and otherwise discriminating against Plaintiff because of his race (Black).

101. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the sections cited herein as set forth.

102. Plaintiff is entitled to the maximum amount allowed under this statute.

### Sixth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Not Against Corporate Defendant)

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. New York State Executive Law § 296(6) provides in pertinent part, that it shall be an unlawful discriminatory practice "…for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

105. Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the statute cited herein as set forth.

106. Plaintiff is entitled to the maximum amount allowed under this statute.

**Seventh Cause of Action for Retaliation
Under the New York State Executive Law
(Against All Defendants)**

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

108. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice:
>
> (e) For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

109. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the sections cited herein as set forth.

110. Plaintiff is entitled to the maximum amount allowed under this statute.

**Eighth Cause of Action for Discrimination
Under the New York City Administrative Code
(Against All Defendants)**

111. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

112. New York City Administrative Code § 8-107(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual orientation, uniformed service, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

113. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(1)(a) by creating and maintaining a hostile work environment and otherwise discriminating against Plaintiff because of his race (Black).

114. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the sections cited herein as set forth.

115. Plaintiff is entitled to the maximum amount allowed under this statute.

### Ninth Cause of Action for Discrimination
### Under the New York City Administrative Code
### (Not Against Corporate Defendant)

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

117. New York City Administrative Code § 8-107(6) provides that:

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

118. Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the sections cited herein as set forth.

119. Plaintiff is entitled to the maximum amount allowed under this statute.

### Tenth Cause of Action for Retaliation
### Under the New York City Administrative Code
### (Against All Defendants)

120. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

121. New York City Administrative Code § 8-107(7) provides, in pertinent part, that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed

> a complaint, testified or assisted in any proceeding under this chapter…

122. Defendant NOR, Defendant TUIL, Defendant RICHARDSON and Defendant MASON violated the sections cited herein as set forth.

123. Plaintiff is entitled to the maximum amount allowed under this statute.

**Eleventh Cause of Action for Vicarious Liability
Under the New York City Administrative Code
<u>(Not Against Individual Defendant)</u>**

124. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

125. New York City Administrative Code § 8-107(13) entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor" provides that:

   a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall eb deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

   c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

126. Defendant NOR violated the section cited herein as set forth.

**Jury Demand**

127.  Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*; 42 U.S.C. § 1981, as amended; the New York State Human Rights Law, New York State Executive Law § 296, *et. seq.*; and the New York City Human Rights Law, New York City Administrative Code §§ 8-107, *et seq.*, in that Defendants discriminated against Plaintiff and created a hostile work environment based on Plaintiff's race (Black) and retaliated against Plaintiff due to his complaints of discrimination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff damages for loss of income, the loss of salary, bonus, benefits, and other compensation, which such employment entails;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages;

G. Awarding Plaintiff prejudgment interest;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
August 13, 2021

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: *Shawn Clark*

Shawn R. Clark, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sclark@tpglaws.com